DIANA PALACIOS (State Bar No. 290923)
   dianapalacios@dwt.com
CRISTINA SALVATO (State Bar No. 295898)
   tinasalvato@dwt.com
JOEL RICHERT (State Bar No. 327116)
   joelrichert@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants TITMOUSE INC.,
AMAZON CONTENT SERVICES LLC, CHRIS
PRYNOSKI, SHANNON PRYNOSKI, MARK
BROOKS, and TAL MOSCOVICI

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOYA R. HANKINS, et al., | Case No. 2:25-cv-02454-AB-KS |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| vs. | |
| TITMOUSE INC., et al., | Date:       June 13, 2025 |
| Defendants. | Time:      10:00 a.m. |
| | Ctrm:      7B |
| | Assigned to the Hon. André Birotte Jr. |
| | Action Transferred: March 18, 2025 |

**TO ALL PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 13, 2025 at 10:00 a.m. or as soon thereafter as may be heard in Courtroom 7B of the United States District Court for the Central District of California, United States Courthouse, 350 West First Street, Los Angeles, California 90012, defendants Titmouse Inc., Chris Prynoski, Shannon Prynoski, Mark Brooks, Tal Moscovici (collectively, the "Titmouse Defendants"), and Amazon Content Services LLC ("Amazon") (together with the Titmouse Defendants, "Defendants") hereby move this Court for an order dismissing with prejudice the First Amended Complaint ("FAC") (ECF No. 5) filed by plaintiffs Toya Hankins, Marcus Amick, and Amos Arauz (collectively, "Plaintiffs").

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs' FAC fails to state a claim.[1] Plaintiffs' first cause of action for copyright infringement fails because there is no substantial similarity of protected expression between Plaintiffs' unpublished animated series *Hillside Lakes* and Defendants' animated series *Fairfax*. Because Plaintiffs' claim for direct copyright infringement fails, so too do their remaining causes of action, which are premised on the alleged infringement. Additionally, Plaintiffs' fourth cause of action for unjust enrichment is preempted by The Copyright Act, 17 U.S.C. § 301. Because these defects cannot be cured by amendment, the First Amended Complaint should be dismissed in its entirety with prejudice.

This motion is based on this notice of motion, the memorandum of points and authorities, the declaration of Diana Palacios ("Palacios Decl.") and its exhibits, the notice of lodging with exhibits, and all other matters of which this Court may take

---

[1] Because Defendants' motion to dismiss under Rule 12(b)(6) [ECF No. 19] was pending at the time of transfer, Defendants are re-filing their motion applying Ninth Circuit law. In the alternative, this motion is cognizable as a motion for judgment on the pleadings under Rule 12(c), which is "functionally identical" and subject to the same legal standard. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

judicial notice, the pleadings, files, and records in this action, and on any argument heard by this Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 12, 2025, and April 10, 2025.

DATED: April 17, 2025

DAVIS WRIGHT TREMAINE LLP
DIANA PALACIOS
CRISTINA SALVATO
JOEL RICHERT


By: _____ */s/ Diana Palacios*_____
Diana Palacios

Attorneys for Defendants TITMOUSE INC., AMAZON CONTENT SERVICES LLC, CHRIS PRYNOSKI, SHANNON PRYNOSKI, MARK BROOKS, and TAL MOSCOVICI

MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................. 1

II.    FACTUAL BACKGROUND.................................................... 1

    A.    *Hillside Lakes* ......................................................... 1

    B.    *Fairfax* .................................................................. 3

III.   ARGUMENT ...................................................................... 5

    A.    Plaintiffs' Copyright Infringement Claim Fails. ................... 5

        1.    Lack of Substantial Similarity May Be Decided on a
            Motion to Dismiss. ........................................... 6

        2.    The Works Are Not Substantially Similar. .................. 6

    B.    Plaintiffs' Remaining Claims Fail.................................. 19

IV.    CONCLUSION.................................................................. 20

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**Page**

CASES

*Apple Comp., Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994) ...................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 5, 20

*Astor-White v. Strong*,
    817 F. App'x. 502 (9th Cir. 2020) ..........................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................5

*Benay v. Warner Bros.*,
    607 F.3d at 625 .......................................................................................7

*Berkic v. Crichton*,
    761 F.2d 1289 (9th Cir. 1985) ................................................................9

*Best Carpet Values, Inc. v. Google, LLC*,
    90 F.4th 962 (9th Cir. 2024) ................................................................ 20

*Campbell v. Walt Disney Co.*,
    718 F. Supp. 2d 1108 (N.D. Cal. 2010) ..................................................8

*Carlini v. Paramount Pictures Corp.*,
    2022 WL 614044 (9th Cir. Mar. 2, 2022)................................................6

*Cavalier v. Random House*,
    297 F.3d 815 (9th Cir. 2002) ..................................................................6

*Christianson v. West Publ'g Co.*,
    149 F.2d 202 (9th Cir. 1945) .......................................................... 1, 2, 6

*DuckHole v. NBC Universal Media*,
    2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) ..................................... 5, 7

*Eaton v. Nat'l Broad. Co.*,
    972 F. Supp. 1019 (E.D. Va. 1997) .................................................... 14

ii

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ...............................................................................5

*Fillmore v. Blumhouse Prods.*,
  2017 WL 4708018 (C.D. Cal. July 7, 2017),
  *aff'd*, 771 F. App'x 756 (9th Cir. 2019)...................................... 5, 7

*Funky Films, Inc. v. Time Warner Ent. Co.*,
  462 F.3d 1072 (9th Cir. 2006) ..............................................................9

*Gallagher v. Lions Gate Ent. Inc.*,
  2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ............................... 19

*Gold Glove Prods., LLC v. Handfield*,
  648 F. App'x 679 (9th Cir. 2016) .........................................................8

*Hoff v. Walt Disney Pictures*,
  2019 WL 6329368 (C.D. Cal. Aug. 19, 2019)................................ 1, 2

*Idema v. Dreamworks, Inc.*,
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) ...............................................8

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir. 1994) ...............................................................8

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) .............................................................8

*Marcus* v. *ABC Signature Studios*,
  279 F. Supp. 3d 1056 (C.D. Cal. 2017) ...............................................5

*Masterson v. Walt Disney Co.*,
  821 F. App'x 779 (9th Cir. 2020) .........................................................6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) .......................................................... 20

*Rentmeester v. Nike*,
  883 F.3d 1111 (9th Cir. 2018) .............................................................6

*Ricketts v. CBS Corps.*,
  439 F. Supp. 3d 1199 (C.D. Cal. 2020) ........................................... 6, 7

*Shame on You Prods. v. Banks*,
  120 F. Supp. 3d 1123 (C.D. Cal. 2015) ...............................................7

iii

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Silas v. Home Box Office*,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016) ...................................................... passim

*Stern v. Does*,
    978 F. Supp. 2d 1031 (C.D. Cal. 2011) ............................................................. 19

*Tarantino v. Gawker Media, LLC*,
    2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) ................................................... 20

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) .............................................................................5

*Tiscareno v. Netflix, Inc.*,
    2014 WL 12558125 (C.D. Cal. Mar. 6, 2014)................................................... 15

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .............................................................................1

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) .................................................. 5, 6, 8, 9

**STATUTES**

17 U.S.C.
    § 301(a) ............................................................................................................ 20
    § 505 ................................................................................................................. 21

**RULES**

Federal Rule of Evidence 201 ......................................................................................5

Rule 12(b)(6) ........................................................................................................ 1, 5

iv

MOTION TO DISMISS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs allege that the animated television series *Fairfax* infringes the copyright in their unpublished series *Hillside Lakes*, but the two works have almost nothing in common beyond the purported premise of "a culturally diverse group of friends in fictional neighborhoods of Los Angeles." It is well established that copyright law does not protect ideas, tropes common to film or television, or elements that naturally flow from a basic premise (so-called *scenes a faire*). Once these unprotectable elements are filtered out, as they must be under well-established law, the actual protected expression in the two works is dispositively different.

Plaintiffs' allegations grossly mischaracterize the works at issue in an effort to demonstrate purported similarities between the two works. But the Court need only review the works at issue to dispose of Plaintiffs' infringement claim on a motion to dismiss. *Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945). If the Court looks beyond Plaintiffs' mischaracterizations to the works themselves, it is clear that there is no similarity, let alone substantial similarity in protected expression. Because this total lack of similarity may be readily determined as a matter of law, Plaintiffs' copyright infringement claim fails, as do Plaintiffs' remaining claims, which are premised on the underlying infringement. Defendants therefore request that this Court dismiss the First Amended Complaint in its entirety with prejudice and award reasonable costs and attorneys' fees.

## II.    FACTUAL BACKGROUND[2]

### A.    *Hillside Lakes*

*Hillside Lakes* is an unpublished adult animated television comedy series set

---

[2] "When deciding a motion to dismiss under Rule 12(b)(6), the Court may consider documents 'incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Hoff v. Walt Disney Pictures*, 2019 WL 6329368, at *1 (C.D. Cal. Aug. 19, 2019) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)); *see also Silas v. Home Box Office*, 201 F. Supp. 3d 1158, 1168-69 (C.D. Cal. 2016)

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

in a "fictitious LA neighborhood" that follows "[a] group of dysfunctional 20-somethings on the outskirts of Hollywood [who] find themselves living a life as bizarre as the neighborhood they call home." Ex. B at 3. The main characters are roommates and neighbors in an apartment complex called Hillside Lakes. *Id.* Effective November 13, 2021, Plaintiffs registered the pilot script of *Hillside Lakes* entitled *The Big Break* with the U.S. Copyright Office, Registration Number PAu 4-109-634. Compl. (ECF No. 1), Ex. 1; Ex. A.

The pilot episode opens on Eric (25, white), described as a "nerdy introvert," standing outside the Hillside Lakes apartment complex waiting for his roommates and neighbors to arrive for a photoshoot "to pitch a reality show." Ex. A at 1-3. Perched on Eric's shoulder is Max, his exotic pet bird, who appears to take delight in launching verbal barbs and spitting four-letter words at anyone who crosses him. *See, e.g.*, *id.* at 1-3.

While Eric waits on the sidewalk, inside the Hillside Lakes apartment complex, Tony (black, 23), an "aspiring sound engineer," sits on the couch while "scour[ing] … Craigslist" to buy and resell electronic gadgets. *Id.* at 3-4. Tony is interrupted when his roommate, Johnny, "a 24-year-old *Jersey Shore*-type" meat-head "strolls into the living room," followed by his incensed pop-star girlfriend Nikki (white, 23). *Id.* at 3-5. Meanwhile, at the fictional ABS television studios, associate producer Sam (white, 24), a "tomboyish brunette," is brainstorming ways

---

(granting motion to dismiss after examining episodes of television series that were referenced in, but not attached to, the complaint), *aff'd*, 713 F. App'x 626 (9th Cir. 2018).

Plaintiffs reference and rely on both *Fairfax* and the pilot script and pitch bible for *Hillside Lakes* throughout the First Amended Complaint. *See, e.g.*, FAC ¶¶ 24-25, 45-46, 56-86. Because these materials are "central" and "integral" to Plaintiffs' claims, each exhibit properly may be relied upon by the Court. *See Hoff*, 2019 WL 6329368, at *1; *Silas*, 201 F. Supp. 3d at 1168-69. Accordingly, Defendants concurrently submit and request that the Court take judicial notice of the contents of authenticated copies of the pilot script and pitch bible for *Hillside Lakes* as **Exhibits A-B**, and Season 1 and Season 2 of *Fairfax* as **Exhibits C-D**. *See* Declaration of Diana Palacios ("Palacios Decl.") ¶¶ 2-6. Season 1 and Season 2 of *Fairfax* are also available in their entirety through the online streaming service Prime Video (https://www.amazon.com/Fairfax-Season-1/dp/B09HSV9MHL).

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

to "pull[] in younger viewers for … the live summer premiere in Malibu" of the Dr. Pratt Show. *Id.* at 5. The camera then cuts to an image of Dr. Pratt "wearing a pair of tight powder blue swimming trunks … swim[ing] around in a pool of pistachio ice cream ..." *Id.* at 7.

Back at the apartment complex, Tony, Johnny, and their "blonde-hair, surfer-type" roommate Mike, along with Nikki and Sam arrive to join Eric and Max for the photoshoot. *See id.* at 11-15. As the increasingly exasperated photographer attempts to corral the group of friends into lining up for the photo, his efforts are interrupted by Sharif, "the 52-year-old Armenian apartment manager" (*id.* at 17), soon followed by Tony's boss Buttah, "the black 41-year-old owner of the music company Buttah Milk Productions" (*id.* at 21). The pilot episode ends when the photographer, revealed to be "legendary animation creator" Seth MacFarlane, fed up with the group's antics, calls off the idea of pitching a Hillside Lakes reality show. *Id.* at 22. McFarlane then peels away in his DeLorean, leaving the group of misfits choking on his exhaust. *Id.* at 23-24.

## B.   *Fairfax*

*Fairfax* is an adult animated comedy series that follows the misadventures of thirteen year-olds Dale, Derica, Benny, and Truman, four best friends on a never-ending quest for clout, *i.e.*, fame. Central to their world is Los Angeles's Fairfax Avenue: the cradle of "hypebeast" culture. In the pilot episode of *Fairfax*, Dale, crammed into the backseat of a station wagon, arrives in Los Angeles from Oregon with his dad and step-mom, who are taking over his uncle's vape shop located in the heart of the Fairfax neighborhood. Ex. C (Ep. 101) at 03:35. Dale, a cheerful but naive Eagle Scout who loves the outdoors is immediately awed by the streetwear-obsessed Fairfax Avenue. *Id.*

Just as Dale arrives, the ultra-trendy fashion label LATRINE, helmed by the reclusive Hiroki Hassan, announces the drop, *i.e.*, release, of the instantly coveted Dr. Phil Box Tee. *Id.* at 03:40. The announcement of the drop sends all of Fairfax

MOTION TO DISMISS

into a frenzy. But by the time Derica, Benny, and Truman arrive at the LATRINE boutique on Fairfax Avenue, the line to cop, *i.e.*, purchase, the T-shirt, already stretches for miles. *Id.* at 02:44.  After discovering that Dale doesn't know what a "drop" is, Derica, Benny, and Truman adopt Dale into their crew and dub themselves the Gang Gang. Soon the four best friends are scheming (unsuccessfully) for ways to get their hands on a Dr. Phil Box Tee, including by kidnapping the dog of the LATRINE store manager. *Id.* at 10:21. Eventually, Dale's dad gifts him a Dr. Phil Box Tee. *Id.* at 19:39. But by that time, the Fairfax bubble has moved onto the next coveted LATRINE item (a dog cone) and the T-shirt is now considered passé. *Id.* at 21:30.

As the first season of *Fairfax* progresses, the Gang Gang find themselves in increasingly fantastic scenarios, including attending a Chernobyl-themed music festival headlined by a rapper named Yung Polluter (*see generally id.* (Ep. 105)), while simultaneously chasing the next must-have hypebeast item. *Fairfax* Season 1 culminates in a Willy Wonka-inspired finale, where Dale, Derica, Benny, and Truman, after finding a golden Dorito chip, visit the LATRINE headquarters. *Id.* (Ep. 108) 04:36. There, they meet their idol Hiroki Hassan, as well as his conniving second-in-command, Brian. Afterwards, the Gang Gang returns to Fairfax Avenue decked out in head-to-toe LATRINE only to find that the rest of Fairfax is now obsessed with Brian's eponymous new label, OFF-BRIAN.

In Season 2 of *Fairfax*, Hiroki Hassan has disappeared and LATRINE is officially not cool. Ex. D (Ep. 201) at 00:05. OFF-BRIAN now has a strangle-hold on Fairfax Avenue hypebeast culture, and Brian has begun a reign of terror. To restore order, the Gang Gang search for Hiroki Hassan's whereabouts and find him at Clout 9, a influencer detox and rehab center. *Id.* (Ep. 206) at 01:16. In the season finale, the Gang Gang convince Hiroki Hassan to return to Fairfax Avenue to battle Brian so that LATRINE can again reign supreme. *Id*. (Ep. 208) at 19:22.

MOTION TO DISMISS

**Davis Wright Tremaine** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### III.    ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id* at 679. Courts likewise may "consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007). Specifically, courts may consider historical facts "not subject to reasonable dispute," *Marcus* v. *ABC Signature Studios*, 279 F. Supp. 3d 1056, 1062-63 (C.D. Cal. 2017), and "generic elements of creative works." *Zella*, 529 F. Supp. 2d at 1129.[3]

### A.    Plaintiffs' Copyright Infringement Claim Fails.

To establish copyright infringement, Plaintiffs must prove "copying of constituent elements of the work that are original," *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted), typically by showing "that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).[4] Dismissal is warranted "as a matter of law" where "[n]othing

---

[3] *See, e.g.*, *DuckHole* v. *NBC Universal Media*, 2013 WL 5797279, at *4 (C.D. Cal. Sept. 6, 2013) (taking judicial notice of generic elements of veterinary-themed sitcoms that "can be verified simply by watching television for any length of time"); *Fillmore v. Blumhouse Prods.*, 2017 WL 4708018, at *3 (C.D. Cal. July 7, 2017) (taking judicial notice of common tropes and narrative devices in horror, fantasy, and science-fiction), *aff'd*, 771 F. App'x 756 (9th Cir. 2019).
[4] Defendants dispute Plaintiffs' allegations of ownership of a valid copyright in the *Hillside Lakes* materials as well as allegations that Defendants had access to "animatics, scripts, sizzle reels, notes, and a pitch bible" associated with Plaintiffs' animated series, FAC ¶¶ 14-15, 17-18, 55. However, solely for the purposes of this

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

disclosed during discovery could alter the fact that the allegedly infringing works are … not substantially similar." *Rentmeester v. Nike*, 883 F.3d 1111, 1123 (9th Cir. 2018), *overruled on other grounds by Skidmore*, 952 F.3d 1051.

### 1.    Lack of Substantial Similarity May Be Decided on a Motion to Dismiss.

Courts in this Circuit have recognized that "[w]hen the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson*, 149 F.2d at 203. The Ninth Circuit has repeatedly affirmed early dismissals of cases alleging infringement on substantial similarity grounds and declined to subject defendants to unnecessary and burdensome discovery. *See, e.g.*, *Masterson v. Walt Disney Co.*, 821 F. App'x 779, 780, 780 n.1 (9th Cir. 2020) (listing ten affirmances); *see also Carlini v. Paramount Pictures Corp.*, 2022 WL 614044, at *1-2 (9th Cir. Mar. 2, 2022), *cert. denied*, 143 S. Ct. 103 (Mem) (2022); *Astor-White v. Strong*, 817 F. App'x. 502, 503-04 (9th Cir. 2020).

### 2.    The Works Are Not Substantially Similar.

In determining substantial similarity, the Ninth Circuit applies the "extrinsic test," which "focuses on 'articulable similarities'" between the works. *Zella*, 529 F. Supp. 2d at 1133. In comparing the works, "a court must filter out and disregard the non-protectible elements," *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir. 2002), and "may place *no* reliance upon any similarity in expression resulting from [those] unprotectable elements." *Apple Comp., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (internal quotation marks omitted).

Courts thus must filter out *scenes a faire*, or elements that flow naturally from a basic premise. *Cavalier*, 297 F.3d at 823. For example, in *Ricketts v. CBS Corps.*, 439 F. Supp. 3d 1199 (C.D. Cal. 2020), the court held that despite the fact that both

---

motion, Defendants do not challenge access and ownership. Thus, the sole issue is whether the works are substantially similar.

MOTION TO DISMISS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

works "involve[d] a talented African-American football player … who eventually plays football for a school in a 'more privileged' area[,] … [such] 'a well-trodden 'rag to riches' story arc … is not protectable." *Id.* at 1212 (citation omitted). Further, the court found that plot points such as "the protagonist faces racism from the white football player," or "scenes where the protagonist goes back and forth between the 'hood' and the 'privileged' area," were likewise unprotectable because these "flow necessarily or naturally from [the] basic plot premise." *Id.* (quoting *Benay v. Warner Bros.*, 607 F.3d at 625).

Similarly, in *Benay*, the Ninth Circuit disregarded similarities that flowed from the "basic plot premise" of "an American war veteran [who] travels to Japan in the 1870s to train the Imperial Army in modern Western warfare" as *scenes a faire. Id.* at 625. Such unprotectable elements included "meetings with the Emperor and numerous battle scenes," and the fact "in both works the American protagonist is spiritually transformed by his experience in Japan." *Id. See also Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1151 (C.D. Cal. 2015) (dismissing copyright claim after disregarding similarities flowing from the works' shared premise, such as "[g]etting drunk, spending a 'one-nighter' with someone you just met, waking up disoriented the next morning at the individual's house or apartment, and putting on the clothes worn the night before"), *aff'd*, 690 F. App'x 519 (9th Cir. 2017).

Courts likewise filter out elements common to films, television series, and specific genres. *See, e.g., DuckHole*, 2013 WL 5797279, at *4, *8-9 (finding themes such as "sexual tension" and "constant insults" between characters were "common to sitcoms with [an] ensemble cast" and thus unprotectable); *Fillmore*, 2017 WL 4708018, at *3 (finding that "[d]ream sequences" and "[b]ringing the dead back to life" are unprotectable); *Shame on You Prods.*, 120 F. Supp. 3d at 1159 (holding "outdoor chase on wheels" was too generic of a concept to be protectable).

After unprotectable elements are filtered out, courts compare the objective "expressive elements" in the plot, themes, dialogue, mood, setting, pace, characters,

and sequence of events of the two works. *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994); *see also Gold Glove Prods., LLC v. Handfield*, 648 F. App'x 679, 680-81 (9th Cir. 2016) (extrinsic test not met where "setting, mood, and pace of [the works] are obviously different, as is the dialogue"). To assess similarity, the law requires a review of the actual works, not plaintiff's characterization of them. *See Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1113 (N.D. Cal. 2010) (rejecting allegations of similarity that were "contradicted by the two stories themselves"). Courts afford little weight to a plaintiff's list of "random similarities scattered throughout the works," *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1180 (C.D. Cal. 2001), since such "lists of similarities are inherently subjective and unreliable." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984). *See also Zella*, 529 F. Supp. 2d at 1138 (explaining "randomly selected similarities of generic elements" are insufficient).

As an initial matter, the premise of *Hillside Lakes*, which is Plaintiffs' primary alleged "similarity" between the two works, is not protectable as a matter of law. Indeed, numerous other animated series are centered around "a culturally diverse group of friends" (*see* FAC ¶¶ 16, 45), including *Futurama*, *Recess*, *Codename: Kids Next Door*, *Big Mouth*, and *BoJack Horseman*. And some of these, such as *Big Mouth* and *BoJack Horseman*, are even set in and around a fictionalized version of Los Angeles. For example, the animated series *Big Mouth* takes place in a fictionalized mash-up of suburban New York and Los Angeles, and explores the lives of teenage middle school students of various backgrounds, including characters of Latino, Jewish, African-American, and Asian heritage.

Many elements naturally flow from a Los Angeles setting, including celebrity encounters, characters with aspirations of fame, work in the entertainment industry, diverse cultural groups, and cityscapes, all of which are unprotectable *scenes a faire*. Los Angeles is the center of the entertainment industry in the United States, and many celebrities reside in the area; it thus naturally follows that a television

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

series based in Los Angeles would include celebrity encounters, plotlines involving aspiring actors or singers, and references to entertainment industry work. Additionally, Los Angeles is one of the most racially and culturally diverse cities in the United States; it thus follows that a television series based in Los Angeles would include racially and culturally diverse characters. Other elements are common to the adult animated series genre, including social commentary, pop culture references, narrative elements such as flashbacks and dream sequences, and surreal or absurd storylines.

As set forth below, Plaintiffs' purported similarities are based on *scenes a faire* to the Los Angeles setting or on elements typical of the adult-animation genre. Such elements are neither protectable nor do they exclusively belong to Plaintiffs. And in any event, the way in which these elements are expressed differs drastically in each work such that there is no substantial similarity in protectable elements between *Hillside Lakes* and *Fairfax*.

### a.      The Plots and Plot Elements Are Not Similar.

"'[P]lot' is defined as the 'sequence of events by which the author expresses his theme or idea' that is sufficiently concrete to warrant a finding of substantial similarity if it is common in both works." *Zella*, 529 F. Supp. 2d at 1135 (citation omitted). As "[g]eneral plot ideas are not protected by copyright law," to assess substantial similarities, courts look to "the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985). Courts frequently reject substantial similarity claims where works' plotlines have similarities but are "develop[ed] quite differently." *Funky Films, Inc. v. Time Warner Ent. Co.*, 462 F.3d 1072, 1077-1078 (9th Cir. 2006).

Here, all of the purported similarities between the plots and plot elements are unprotectable concepts, *scenes a faire*, or blatant mischaracterizations of one or both of the works.

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

• As explained above, the basic premise of "a culturally diverse group of friends in … Los Angeles" (FAC ¶ 56) is not in itself protectable and many films and televisions series have explored this same idea. But even the actual expression of this unprotectable idea is entirely different between the two series. In *Hillside Lakes*, the primary characters are three white men, a white woman, an Afro-Latino man, and a talking bird. *See generally* Ex. B. In contrast, the primary characters in *Fairfax* are a white boy, an Afro-Latina girl, a Korean-American boy, and an African-American boy. *See generally* Ex. C (Ep. 101). Further, the characters in *Hillside Lakes* are roommates and neighbors who reside in the same apartment complex (*see generally* Ex. B) whereas the characters in *Fairfax* are a group of best friends who attend the same middle school.

• Plaintiffs contend that the storyline of the pilot episode of *Fairfax* "mimics" that of *Hillside Lakes* because in both works the characters "gather for a cultural opportunity." *See* FAC ¶ 60. But this purposefully abstract allegation is both misleading and entirely undermined by the works themselves, which demonstrate that the storylines are not similar. In the *Hillside Lakes* pilot, the characters spend the entire episode gathering for a photoshoot outside of their apartment complex to pitch a "reality show." *See id.*; Ex. A at 3, 16, 22-23. In *Fairfax*, the audience is introduced to the characters when the ultra-trendy fashion label LATRINE suddenly announces the drop of the Dr. Phil Box Tee (Ex. C (Ep. 101) at 00:30) and Dale moves to the neighborhood (*id.* at 03:30). The group spends the rest of the time hunting down the elusive, must-have tee. There is simply no plot similarity between gathering for a photoshoot to pitch a reality show and hunting for an exclusive streetwear fashion product.

• Plaintiffs assert that the introduction of each episode of *Fairfax* copies the "original theme song and color-popping animation style graphic effects" in *Hillside Lakes* (FAC ¶ 57), but this assertion is disingenuous at best. Plaintiffs cannot own the concept of "color-popping animation," and a flashy and colorful

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

introduction is a common element of countless animated series. Moreover, the animation style of *Fairfax* is not at all similar to the animation style in *Hillside Lakes* (which resembles that of Seth MacFarlane). *Compare* Ex. C. *with* Ex. B. And even a cursory review of the *Fairfax* theme song, which repeats the lyrics "Waitin' for the Drop," reveals that it is entirely original to *Fairfax* and its streetwear fashion-obsessed plot, which has nothing to do with *Hillside Lakes*. *See* Ex. C (Ep. 101) at 03:19.

- Plaintiffs claim that both works contain "wise-cracking birds" that open and close the show. FAC ¶ 58. While both works contain "wise-cracking birds," this is simply an unprotectable idea commonly used in animated works (including, for example, *Aladdin*, *Heckle and Jeckle*, *Dumbo*, *Madagascar*, and *The Jungle Book*), and the expression of this idea in each work is entirely different, as set forth in Section III.A.1.c below. In terms of plot, the pigeons Glenn and Quattro in *Fairfax* do not open and close each episode; although they do appear in each episode, there is no formula for when they appear. They provide humorous commentary but do not take part in the action, unlike Max, the pet parrot who is a "primary character" in *Hillside Lakes*.

- Relatedly, Plaintiffs contend that "the opening and closing scene of both series feature a car crashing into a typically immobile streetside utility object or dialogue directly regarding such act" (*see* FAC ¶¶ 59, 71 (describing the *Fairfax* scene as "a car hitting a pole")). This is a blatant mischaracterization. Nowhere in *Fairfax* does a car hit a pole—it hits a fire hydrant, and a fountain of water emerges from the crash point. Ex. C (Ep. 101) at 06:11. This occurs in response to Dale's statement that he doesn't know the LATRINE brand, and it is presented as an amusing reaction to an outrageous statement. Nothing similar occurs in *Hillside Lakes*. In the pilot script, "rowdy teens" drive by in a car taunting Eric and Max, which leads Max to say "I hope they hit a pole." Ex. A at 2. Later, Seth MacFarlane gets so frustrated that he gets into his DeLorean and drives away as "Back to the

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Future theme music" plays and the DeLorean "speeds down the street, with fire blazing out of the exhaust." Ex. A at 25. Choking on exhaust, Max hurls, "I hope that dumb bastard hits a pole," but no one actually hits anything. *Id.*

- Plaintiffs allege that both *Hillside Lakes* and *Fairfax* include "television celebrity doctor[s]" who "are significant characters." FAC ¶¶ 62-65. While both works include television celebrity doctors, they treat this unprotectable concept differently. In *Hillside Lakes*, one of the primary characters, Sam, is an associate producer on the "Dr. Pratt Show" Ex. B. at 4. Dr. Pratt (described as a Dr. Phil-like character) has no dialogue and is imagined in increasingly fantastical ideas suggested by the producers to "pull[] in younger viewers." *See* Ex. C at 5-8. In contrast, *Fairfax* references the actual Dr. Phil, whose images appears on the coveted T-Shirts and in one scene where he speaks to Dale in a dream. Ex. C (Ep. 101) at 13:35. Beyond this cameo, Dr. Phil (a cultural icon, whose image has appeared in numerous television shows) does not appear again in *Fairfax* and is not a "significant character."

- Plaintiffs claim that both *Hillside Lakes* and *Fairfax* "include[] an episode in which a highly valued pet is kidnapped and held for ransom." FAC ¶ 66. While both works include the unprotectable plot device of pet kidnappings, common in animated works, the expression of this plot device in each work differs significantly. In *Hillside Lakes*, a potential episode describes a storyline where Max, a primary character, is mistakenly kidnapped and held for ransom by "a mischievous group of hip hop heads" who think he is a famous rapper's cockatoo. Ex. B at 19. By contrast, in *Fairfax*, it is the protagonists who do the kidnapping; the Gang Gang is so desperate to cop a Dr. Phil Box Tee that they hold the LATRINE store manager's dog over a toilet, threatening to drown it if their demands are not met. Ex. C (Ep. 101) at 10:21.

- Plaintiffs allege that both series include "a supporting character wearing tight blue swimming trunks," who is portrayed in *Hillside Lakes*

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

"swimming around" with a "group of young fans," and in *Fairfax* "in a sea of 'heart[s],'" which Plaintiffs explain is "the social media equivalent of fans." FAC ¶ 69. This is a gross mischaracterization. In the *Hillside Lakes* pilot script, Dr. Pratt is described as wearing "tight powder blue swimming trunks" while swimming "in a pool of pistachio ice cream." Ex. A at 7. In *Fairfax*, main character Benny explains that the whole purpose of collecting LATRINE gear is to get "likes" on social media; Benny's eyes then glaze over in a daydream and he imagines himself wearing a pair of blue underwear while laying on a pile of red hearts in an shot spoofing Mena Suvari in *American Beauty*. Ex. C (Ep. 101) at 07:45. The obvious differences between these two scenes undermine any attempt to characterize them as similar.

• Plaintiffs allege that both series "include a bizarre and out-of-ordinary street encounter with a transient current celebrity." FAC ¶ 70. But celebrity encounters are *scenes a faire* to a series set in Los Angeles where many celebrities reside. Moreover, Plaintiffs' allegation is highly misleading, as the two celebrity encounters have nothing in common. In *Fairfax*, Dale, Derica, Benny, and Truman seek out Benny's contact Joaquin Phoenix, who is now an avant-garde performance artist, to help them get a Dr. Phil Box Tee, but Joaquin is preoccupied with a new art project involving self-immolation. Ex. C (Ep. 101) at 09:15. The group is so focused on getting the shirt that they casually turn their attention elsewhere as Joaquin bursts into flames. *Id.* at 10:06. In *Hillside Lakes*, a Marilyn Mason-like character "pushing a packed grocery cart in the street and wearing a black trench coat" randomly appears, stares at the group "with a creepy, sinister look," and interrupts the photoshoot to hawk electrical gadgets to Tony. Ex. A at 19-21.

• Plaintiffs' allegation that the continuing storylines of both *Hillside Lakes* and *Fairfax* include "characters wildly licking popsicles" (FAC ¶ 68) is also a brazen mischaracterization of both works. In the pilot for *Hillside Lakes*, Mike visits a cannabis dispensary that doubles as a popsicle stand where he encounters a

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

"Mexican Hippe" licking a popsicle. Ex. A at 9-10. In Episode 102 of *Fairfax*, Benny and Truman, after getting knocked out during a dodgeball match, buy and enjoy popsicles from a street vendor. Ex. C (Ep. 102) at 02:35. And in the immediate next scene, Benny is still eating his popsicle during an assembly in the school gymnasium. *Id.* at 03:05. These are the only two scenes in all 16 episodes of *Fairfax* that involve popsicles, and neither Truman nor Benny is shown "wildly licking" their popsicles.

In sum, none of the plot points of *Hillside Lakes* and *Fairfax* are similar, much less substantially so.

### b.    The Theme is Not Similar.

"A work's theme is its overarching message," and "there is no protection for stock themes or themes that flow necessarily from a basic premise." *Silas*, 201 F. Supp. 3d at 1180.

Plaintiffs do not explicitly allege that the theme of *Fairfax* is similar to that of *Hillside Lakes*, nor can they. The logline of *Hillside Lakes* reads: "A group of dysfunctional 20-somethings on the outskirts of Hollywood find themselves living a life as bizarre as the neighborhood they call home" (Ex. B at 3) and the pilot episode explores themes of young adulthood, including the difficulties of early careers and relationships. In contrast, *Fairfax* centers on the lives of four middle schoolers navigating the hypebeast and streetwear scene in Los Angeles; it explores themes of adolescence, including the struggle to be cool or popular in modern consumer and social media culture. The works are not similar as to this element.

### c.    The Characters Are Not Similar.

"[B]asic human traits that certain characters share, including age, sex, and occupation, are too general or too common to deserve copyright protection." *Eaton v. Nat'l Broad. Co.*, 972 F. Supp. 1019, 1029 (E.D. Va. 1997). Further, "courts require a very high degree of similarity between characters," and even some shared traits between characters are not enough to prove substantial similarity where the

MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

characters "have noticeable differences." *Silas*, 201 F. Supp. 3d at 1177; *see, e.g.*, *Tiscareno v. Netflix, Inc.*, 2014 WL 12558125, at *9 (C.D. Cal. Mar. 6, 2014) (finding no substantial similarity between characters where there is "a significant age gap, there are different maturity levels ... different outlooks on life" and "different perspectives and moods"). Plaintiffs rely on blatant mischaracterizations to claim character similarities, but the works themselves reveal that beyond a few superficial basic traits, none of the primarily adolescent characters in *Fairfax* bear even the slightest resemblance in either physical or non-physical traits to the adult characters in *Hillside Lakes*.

### (1)    *Hillside*'s Tony and *Fairfax*'s Truman

Apart from the fact that both Tony and Truman are African-American (*see* FAC ¶¶ 72-73), the two characters have almost nothing in common. In *Hillside Lakes*, Tony is 23-year-old of African-American of Dominican descent who moved to Los Angeles to pursue his dream to be "a sound engineer at a major Hollywood music studio" but currently works at a struggling music production company. Ex. B at 9. "When not at the studio," he is "scouring the Internet, buying gadgets and reselling them on Craigslist for extra money." *Id.* Tony is portrayed sporting a beard and mustache, and wears glasses, a maroon hoodie, jeans, and non-descript black shoes. *Id.*

In contrast, Truman is a teenager, self-proclaimed "auteur" filmmaker, and student at Fairfax Middle School. In the pilot episode, the audience is introduced to Truman taking photographs of a middle-aged widow for her Tinder profile as part of his side hustle. Ex. C (Ep. 101) at 02:09. Truman is portrayed wearing a coral-red pocket t-shirt, khaki pants, and Chuck Taylor sneakers. All of these "noticeable differences" in age, occupation, and appearance cut against a finding of substantial similarity. *See Silas*, 201 F. Supp. 3d at 1177.

### (2)    *Hillside*'s Eric and *Fairfax*'s Dale

Plaintiffs' allegations that Eric in *Hillside Lakes* is substantially similar to

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Dale in *Fairfax* (FAC ¶ 79) is plainly contradicted by the works themselves; in fact, the characters are nothing alike. Eric, who is 25 years-old, moved to Hillside Lakes from Scottsdale, Arizona six years ago "to take a job as a game developer." Ex. B at 10. He is described as an "introvert" and "pretty much the typical nerd, aside from his 'doom and gloom' perspective on life." *Id.* Eric "doesn't talk much about his personal life, which leaves many wondering about his sexual orientation." *Id.* He lives at the Hillside Lakes apartment complex with Max, "his feathered, foulmouthed roommate." *Id.*

Dale is the new-kid at Fairfax Middle School who just moved from Oregon with his dad and step-mom. He is upbeat and earnest, loves to rock-climb and camp, and proudly touts his survival skills honed from years spent in the outdoors as an Eagle Scout. Unlike the rest of his peers, when Dale arrives in Los Angeles, he does not even have an Instagram account. Dale's buoyant personality wins over not only Derica, Benny, and Truman, but also his middle-school crush, Lily. *See* Ex. D (Ep. 207) at 17:57. All of these obvious differences preclude a finding of substantial similarity.

### (3)    *Hillside*'s Sam and *Fairfax*'s Derica

Plaintiffs proffer the incredible allegation that Derica in *Fairfax* is copied from Sam in *Hillside Lakes*. FAC ¶ 83. Aside from both being women, there are no similarities between them. Sam is a white, 24-year-old associate producer at a major television studio. Ex. B at 12. She is depicted as a brunette with her hair pulled-back into a pony tail, and wears glasses and a blazer. *See id.* "Despite her tomboyish looks … Sam is very much a nympho when it comes to sex," and "[is] known for her one-night-stands." *Id.*

Derica is a queer Afro-Latina girl in middle school. She is both a social justice warrior intent on saving the environment, and also a teenager obsessed with chasing clout. Derica's buzzed hair is dyed pink, and she typically is portrayed wearing a white tank-top, ripped jeans, and a long shearling-lined coat. Derica

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

becomes increasingly enamored with Melody, another student at Fairfax Middle School. Ex. D (Ep. 207) at 17:36. As with the other main characters, Sam and Derica are not substantially similar as they share no similarities in appearance or other character traits, including interests, motivations, age, or sexual identity.

### (4)    *Hillside*'s Max and *Fairfax*'s Glenn/Quattro

Plaintiffs' allegation that both works "prominently feaure[] raunchy, foul-mouthed birds, who provide off-the-cuff commentary" (FAC ¶ 82) is merely an unprotectable idea. In reality, the expression of this idea differs significantly between the two works. Max, who is a "primary character," is "[a] cross between a traditional Scarlet Macaw Parrot and a Sulphur-crested Cockatoo." Ex. B at 11. Conversely, Glenn and Quattro, two mellowed-out pigeons, are never depicted as interacting (physically or verbally) with the rest of the main characters in *Fairfax*. Rather, they quip to each other and provide commentary from outside the action, typically while perched on a street sign. *See, e.g.*, Ex. C (Ep. 101) at 22:10. These readily apparent differences undermine Plaintiffs' allegations of substantial similarity as to these characters.

### (5)    *Hillside*'s Buttah and *Fairfax*'s Principal Weston

Plaintiffs describe Buttah and Principal Weston ("P-Dub") as sharing "the same complexion and matching facial hair, tall and muscular build, voice and cadence of speech, and tone of voice." FAC ¶ 74. But while Buttah and Principal Weston are both African-American and have a goatee, the similarities end there. "Buttah is in great physical shape," and insists on wearing "velour sweat suits" and a gold chain around his neck. Ex. B at 13. Principal Weston, on the other hand, has a "dad-bod" and is primarily portrayed wearing khakis, a green sweater vest, and a blue tie. *See, e.g.*, Ex. C (Ep. 102) at 02:55.

Buttah is a retired professional football player with an "old-school" mentality who "decided to dump his money into starting his own music production company." FAC ¶ 75; Ex. B at 13. Buttah is not a mentor figure; he is Tony's irksome boss.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*See* Ex. A at 22. Conversely, Principal Weston is the principal of Fairfax Middle School. He is not "old-school"; he is tech savvy, and attempts to keep up with the Gen-Z trends and lingo. Moreover, just like his students, Principal Weston is addicted to chasing clout, and often encourages his students to "follow" him on the "gram." These noticeable differences in both appearance and basic character traits militate against a finding of substantial similarity.

**(6)**    *Hillside*'s Nikki and *Fairfax*'s Melody

Apart from the fact that Nikki and Melody are both celebrities, there is almost no similarity between the two characters. FAC ¶ 84. Nikki is a 23-year-old pop-star. Ex. B at 14. Melody is a bi-racial student at Fairfax Middle School and a celebrity social media influencer. Unlike Nikki, who has "ghetto mannerisms" and affects a "sista-like tone" (*id.* at 14; Ex. A at 5), Melody behaves and speaks like the quintessential valley girl. The two characters are not substantially similar.

**d.    The Setting Is Not Similar.**

"The mere fact that the two shows are set in the same city does not give rise to a finding of substantial similarity of copyrightable expression." *Silas*, 201 F. Supp. 3d at 1176. And, any purported similarities in setting between *Hillside Lakes* and *Fairfax* are *scenes a faire* to a television series set in Los Angeles. For example, it is unsurprising that a series set in Los Angeles would reference many of the city's real-life neighborhoods (*e.g.*, Hollywood) and portray the city's actual "geography, ethnic demographics, age demographics, and income levels." FAC ¶ 85. Nor is it surprising that a series set in Los Angeles would feature generic business establishments typical of cityscapes such as a coffee shop or marijuana dispensary. *See id.* ¶ 86. Apart from these *scenes a faire*, *Hillside Lakes* and *Fairfax* do not share a single setting in common. Moreover, the Los Angeles setting is expressed differently in each work. *Hillside Lakes* is centered around an apartment complex in an entirely fictitious neighborhood "loosely based on LA's Thai Town and Los Feliz neighborhoods." Ex. B at 4-5. In contrast, *Fairfax* is set in a fictional version

18

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27ᵀᴴ FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

of the actual Fairfax neighborhood in Los Angeles. The two works are not

substantially similar as to this element.

### e.     The Dialogue Is Not Similar.

Copyright law does not protect "fragmentary words and phrases." *Stern v.

Does*, 978 F. Supp. 2d 1031, 1040 (C.D. Cal. 2011) (citation omitted), *aff'd sub*

*nom. Stern v. Weinstein*, 512 F. App'x. 701 (9th Cir. 2013). Accordingly, "for a

plaintiff to demonstrate substantial similarity of dialogue, it must show 'extended

similarity of dialogue.'" *Silas*, 201 F. Supp. 3d at 1181 (citation omitted). Here,

Plaintiffs identify only a single instance of supposedly shared dialogue, claiming

that *Fairfax*'s Dale uses the "signature and uniquely recorded tagline of

'Whaaaaaat?!'" used by *Hillside Lakes*'s Mike, even going so far as to claim,

implausibly, that it was "sample[d]." FAC ¶¶ 80-81. Setting aside that this

supposedly signature tagline is used only once in the *Hillside Lakes* pilot script and

is not even mentioned in the pitch bible (*See* Ex. A at 12 and Ex. B at 8), it is a

common word that is clearly not copyrightable as a matter of law. *See Stern*, 978 F.

Supp. 2d at 1040. And, in any event, it is insufficient to establish "extended

similarity." *See, e.g.*, *Gallagher v. Lions Gate Ent. Inc.*, 2015 WL 12481504, at *10

(C.D. Cal. Sept. 11, 2015) (three instances of similar dialogue insufficient);

*Silas*, 201 F.Supp.3d at 1181 (one instance of similar dialogue insufficient).

Because the works before the Court demonstrate that they do not share overlapping

or even similar dialogue, the works are not similar as to this element.

At bottom, a review of the two works demonstrates that *Hillside Lakes* and

*Fairfax* are exceedingly different with respect to every extrinsic element, and thus

Plaintiffs cannot demonstrate substantial similarity sufficient to support their

copyright infringement claim.

### B.     Plaintiffs' Remaining Claims Fail.

Because Plaintiffs fail to plausibly allege direct infringement, Plaintiffs'

remaining claims for contributory copyright infringement (FAC ¶¶ 103-107),

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

vicarious copyright infringement (*id.* ¶¶ 45, 108-111), unjust enrichment (*id.* ¶¶ 112-116), and breach of contract (*id.* ¶ 117-120) likewise fail, as they are premised on direct infringement. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 n.13 (9th Cir. 2007) ("'[s]econdary liability for copyright infringement (such as contributory liability) *does not exist* in the absence of direct infringement by a third party.'") (emphasis added); *Tarantino v. Gawker Media, LLC*, 2014 WL 2434647, at *3 (C.D. Cal. Apr. 22, 2014) ("Plaintiff must first establish direct infringement by third parties because secondary liability cannot exist in the absence of direct infringement by a third party." (citations omitted)). Plaintiffs' conclusory allegation of breach rests entirely on the assertion that Plaintiffs "uncovered an alarming number of substantial similarities" between *Hillside Lakes* and *Fairfax*. FAC ¶ 47. Thus, absent additional factual basis, Plaintiffs' breach of contract claim fails, as the elements of breach and damages are premised on a showing of infringement. *See Iqbal*, 556 U.S. at 678.

Additionally, Plaintiffs' unjust enrichment claim is preempted by The Copyright Act, 17 U.S.C. § 301(a). Plaintiffs unjust enrichment claim alleges that Defendants have "wrongfully receiv[ed] and retain[ed] revenue … through the exploitation of an animated series that copies … and blatantly infringes" *Hillside Lakes*. FAC ¶ 113. Thus Plaintiffs unequivocally base their claim solely on Defendants' alleged copying. Where the unjust enrichment claim is predicated on infringement of a plaintiff's rights under the Copyright Act, it is preempted. *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 973 (9th Cir. 2024).

## IV.    CONCLUSION

This case is not a close call. The works are similar only at the highest level of abstraction—in their unprotectable premise and the elements that naturally flow from this premise and the adult animation genre—and Plaintiffs have resorted to gross mischaracterizations in an effort to identify random purported similarities. The Court, however, can examine the works directly to find that they share no

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

similarity, let alone substantial similarity, in protected expression as a matter of law. For all of these reasons, the Court should exercise its gatekeeping function, dismiss Plaintiffs' First Amended Complaint with prejudice, and award Defendants their costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505, for which Defendants will move by subsequent motion.

DATED: April 17, 2025

DAVIS WRIGHT TREMAINE LLP
DIANA PALACIOS
CRISTINA SALVATO
JOEL RICHERT

By: _____/s/ Diana Palacios_____
          Diana Palacios

Attorneys for Defendants TITMOUSE INC., AMAZON CONTENT SERVICES LLC, CHRIS PRYNOSKI, SHANNON PRYNOSKI, MARK BROOKS, and TAL MOSCOVICI

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Titmouse Inc., Amazon Content Services LLC, Chris Prynoski, Shannon Prynoski, Mark Brooks, and Tal Moscovici, certifies that this brief contains 6,980 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 17, 2025

DAVIS WRIGHT TREMAINE LLP
DIANA PALACIOS
CRISTINA SALVATO
JOEL RICHERT

By: _____/s/ Diana Palacios_____
          Diana Palacios

MOTION TO DISMISS