1 | Paul N. Philips (State Bar No. 187928)
2 | LAW OFFICES OF PAUL N. PHILIPS, APLC
2 | 9440 Santa Monica Boulevard, Suite 301
3 | Beverly Hills, CA 90210
3 | Telephone: (323) 813-1126
4 | Fax: (310) 854-6902

5

6 | Attorney for Plaintiffs TOYA HANKINS, et al.

7 | **UNITED STATES DISTRICT COURT**

8 | **CENTRAL DISTRICT OF CALIFORNIA**

9

| TOYA R. HANKINS, et al., | Case No.: 2:25-cv-02454-AB-KS |
|---|---|
| Plaintiffs, | **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| vs. | |
| TITMOUSE INC., et al., | |
| Defendants. | Date: June 13, 2025 |
| | Time: 10:00 a.m. |
| | Courtroom: 7B |
| | Assigned to the Hon. André Birotte Jr. |
| | Action Transferred: March 18, 2025 |

# TABLE OF CONTENTS

I.    INTRODUCTION ……………………………………………………………… 2

II.   FACTS SET FORTH IN THE FIRST AMENDED COMPLAINT …………. 2

      A. Plot and Dialogue ……………...…………………………………… 6

      B. Characters and Character Relationships ………………………………8

      C. Setting ……...……………………………………………………………9

III.  LEGAL STANDARD ……………………………………………………… 10

IV.   ANALYSIS …………………………………………………………………… 11

      A. Common Pattern of Shared Elements in in *Hillside Lakes* and *Fairfax*…. 19

V.    CONCLUSION……………………………………………………………… 25

1  **TABLE OF AUTHORITIES**

2

3  **CASES**

4

5  *Astor-White v. Strong*, 817 F. App'x 502 (9th Cir. 2020) ……………………….…14

6  *August Image, LLC v. Trend Hunter Inc.*, 2023 U.S. Dist. LEXIS 162807

7     (C.D. Cal. 2023)……………………………………………………………...…12

8  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ……………….....…………11

9  *Brave New Films 501(c)(4) v. Weiner*, 626 F. Supp 2d 1013 (N.D. Cal. 2009)….....11

10  *Carlini v. Paramount Pictures Corp.*, 2022 WL 614044 (9th Cir. Mar. 2, 2022)……14

11  *Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002) …………………..13

12  *Christianson v. West Pub. Co.*, 149 F.2d 202 (9th Cir. 1945) …………………13

13  *Davis v. Scherer*, 468 U.S. 183 (1984) …………………………………………...11

14  *Gregorini v. Apple Inc.*, 2024 U.S. Dist. LEXIS 214480 (2024) ……........…16, 17, 18

15  *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ……………………………………...11

16  *Masterson v. Walt Disney Co.*, 821 F. App'x 779 (9th Cir. 2020) ……………...13, 15

17  *Metcalf v Bochco*, 294 F.3d 1069 (9th Cir. 2002) ………………………………18, 19

18  *Passillas v. McDonald's Corp.*, 927 F.2d 440 (9th Cir. 1991) ………………………15

19  *Polaris Innovations Ltd. V. Kingston Technology Co.*, 223 F. Supp 3d 1026

20     (C.D. Cal. 2016) ………………………………………………………….. 10

21  *RDF Media Ltd. V. Fox Broad. Co.*, 372 F. Supp. 2d 556, 560 (C.D. Cal. 2005) … 11

22  *Scheuer v. Rhodes*, 416 U.S. 232 (1974) ……………………………………………10

23  *Schmidt v Baldy*, 2019 U.S. Dist. LEXIS 182826, 2019 WL 5389868 (C.D.

24     Cal. 2019) …………………………………………………………………18

25  *Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.*, 562 F.2d 1157

26     (9th Cir. 1977) …………………………………………………………...15

27  *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049 (9th Cir. 2008) …………………11

28  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000)………………17

*Twentieth Century-Fox Films*, 715 F.2d at 1330) …………………………………..16

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017) ………...15, 16

*Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ………………….. 11

*Wilson v. Walt Disney Co.*, 2014 U.S. Dist. LEXIS 105310 (N.D. Cal. 2014) ……. 18

*WMTI Prods., Inc. v. Healy*, 2023 U.S. Dist. LEXIS 152761 ………………..…17 - 18

**STATUTES**

17 U.S.C. § 504(b) ……………………………………………………………………15

**RULES**

Federal Rule of Civil Procedure 8(a) …………………………………………………11

Federal Rule of Civil Procedure 8(a)(2) ………………………………………....12

Federal Rule of Civil Procedure 12(b)(6) ………………………………..2, 10, 11, 12

Federal Rule of Civil Procedure 12(c) ……………………………………...2. 10

## I.    INTRODUCTION

This copyright infringement case arises out of Defendant Titmouse Inc.'s ("Defendant Titmouse") production, and Defendant Amazon Content Services LLC's ("Defendant Amazon") distribution, of an animated series that directly mirrors Plaintiffs' work. Plaintiffs wrote a unique animated pilot (and related materials) for the animated series titled *Hillside Lakes*, which was premised on a group of misfit characters and their distinct lives, personalities and experiences in a Los Angeles neighborhood. Plaintiffs provided documents regarding *Hillside Lakes* to Defendant Titmouse for the purpose of pursuing a collaborative business relationship where Defendant Titmouse would render services customarily rendered by the production company in connection with producing the series and Plaintiffs would be the creators and writers. Shortly after Plaintiffs' delivery of the materials to Defendant Titmouse, Defendant Titmouse advised Plaintiffs that it was not interested in the series. After receiving the rejection, Plaintiffs learned that Defendant Titmouse produced and Defendant Amazon distributed, without Plaintiffs' permission, an animated series, *Fairfax*, throughout which unique and protectable aspects of *Hillside Lakes* have been incorporated.

Defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim) or alternatively under Federal Rule of Civil Procedure 12(c) (judgment on the pleadings). As set forth below, Plaintiffs' First Amended Complaint states valid and actionable claims for copyright infringement (Count I), contributory copyright infringement (Count II), vicarious copyright infringement (Count III), unjust enrichment (Count IV), and breach of contract (Count V).

## II.    FACTS SET FORTH IN THE FIRST AMENDED COMPLAINT

Plaintiffs created and wrote an original animated series titled *Hillside Lakes* (ECF No. 5, at ¶ 14.) based on Plaintiffs' personal experiences, life stories, observations, and circumstances while living in a Los Angeles neighborhood near

Hollywood, which served as the inspiration for the fictitious *Hillside Lakes* neighborhood, apartment complex, and relationships amongst its characters (ECF No. 5, at ¶ 15.) The characters are a unique group of culturally diverse friends who reside in a fictional version of a Los Angeles neighborhood (ECF No. 5, at ¶ 16.)

Plaintiffs developed *Hillside Lakes* over a period of at least ten years (ECF No. 5, at ¶ 17.) Plaintiffs are the sole and exclusive owners of United States Copyright Registration Number Pau004109634 ("Registration") for work titled *Hillside Lakes, The Big Break* (ECF No. 5, at ¶ 19.) A copy of the Registration is attached to Plaintiffs' First Amended Complaint as Exhibit 1. The Registration is dated November 13, 2021 and shows a 2012 date of creation. Plaintiffs' sole and exclusive rights in and to *Hillside Lakes* include the right of reproduction, adaptation, distribution, performance and display, and the undeniable right to prevent third parties from engaging in any of the foregoing (ECF No. 5, at ¶ 20.)

In August 2013, Plaintiffs engaged Defendant Moscovici as an independent contractor to assist in the creation of a *Hillside Lakes* animatic based on the script and characters created, written, and developed solely by Plaintiffs and based on the directional notes provided to Defendant Moscovici by Plaintiffs (ECF No. 5, at ¶ 21.) Defendant Moscovici and Plaintiff Amick entered into a Confidentiality and Nondisclosure Agreement dated August 12, 2013 ("NDA") (ECF No. 5, at ¶ 29.) A copy of the NDA is attached to Plaintiffs' First Amended Complaint as Exhibit 3. (ECF No. 5.) Defendant Moscovici confirmed his engagement by rendering services to and for Plaintiffs (ECF No. 5, at ¶ 23) and by proudly touting his engagement on his professional LinkedIn profile (ECF No. 5, at ¶ 28.) A screenshot of the LinkedIn profile is attached to Plaintiffs' First Amended Complaint as Exhibit 2. (ECF No. 5.)

In connection with Plaintiffs' engagement of Defendant Moscovici, Plaintiffs provided him with access to and copies of their original *Hillside Lakes* materials ("Hillside Lakes Materials"), including, but not limited to, animatics, scripts, sizzle reels, notes, and a pitch bible (ECF No. 5, at ¶ 24.) The Hillside Lakes Materials to

1   which Defendant Moscovici had direct access include specific plot details, unique

2   character descriptions, and episode information (ECF No. 5, at ¶ 25), each and all of

3   which are proprietary to Plaintiffs (ECF No. 5, at ¶32). Defendant Moscovici

4   expressly promised not to retain or distribute the Hillside Lakes Materials or any

5   confidential or proprietary information about or concerning *Hillside Lakes* without

6   Plaintiff Amick's permission. (ECF No. 5, at ¶ 30; P 2, NDA). Defendant Moscovici

7   never requested and Plaintiff Amick never granted Defendant Moscovici permission

8   to retain, distribute, or disclose the Hillside Lakes Materials or any confidential or

9   proprietary information about or concerning *Hillside Lakes*. (ECF No. 5, at ¶ 31.) As

10  further alleged in Plaintiffs' First Amended Complaint, upon information and belief,

11  in violation of the NDA, Defendant Moscovici wrongfully retained copies of the

12  Hillside Lakes Materials without Plaintiffs' knowledge or consent. (ECF No. 5, at ¶

13  33.) Throughout Defendant Moscovici's engagement by Plaintiffs and thereafter, he

14  was not Plaintiffs' authorized agent and was not authorized to act on Plaintiffs' behalf

15  at any time or for any reason. (ECF No. 5, at ¶ 34.)

16      Following Defendant Moscovici's engagement by Plaintiffs, he was engaged as

17  a storyboard artist by Defendant Titmouse. (ECF No. 5, at ¶ 35.) At the time

18  Defendant Moscovici was employed by or rendering services to Defendant Titmouse,

19  Plaintiff Amick was engaged in progressive discussions through correspondence with

20  Defendant Titmouse through Defendant Brooks, an employee of Defendant

21  Titmouse, regarding a relationship between Plaintiffs and Defendant Titmouse in

22  connection with the exploitation of *Hillside Lakes*. (ECF No. 5, at ¶ 36–37.)

23  Defendant Brooks expressed an interest in Plaintiffs' series, *Hillside Lakes* (ECF No.

24  5, at ¶ 38) and requested Plaintiff Amick send him the Hillside Lakes Materials with

25  full knowledge that *Hillside Lakes* is based on Plaintiffs' personal experiences living

26  in a Los Angeles neighborhood (ECF No. 5, at ¶ 39). Plaintiff Amick sent the Hillside

27  Lakes Materials to Defendant Brooks. (ECF No. 5, at ¶ 40.) Following receipt of the

28  Hillside Lakes Materials and directly contradicting the substance and tone of the

conversations and correspondence between Plaintiff Amick and Defendant Brooks, Defendant Brooks advised Plaintiff Amick that Defendant Titmouse was not interested in furthering a relationship between the parties. (ECF No. 5, at ¶ 41.) In late 2021, Plaintiffs received multiple inquiries from various unrelated third parties regarding the similarity between *Hillside Lakes* and Defendants' "new" animated series called *Fairfax*. (ECF No. 5, at ¶ 43.)

Defendant Titmouse's chief creative officer, Antonio Canobbi, has stated in published interviews that Defendant Titmouse encourages its staff to submit show ideas and frequently develops them. (ECF No. 5, at ¶ 42.) Plaintiffs reasonably believe that such company directive was followed here as the similarities contained in each respective work are present by more than just a simple coincidence. Its animated series *Fairfax* follows a group of culturally diverse friends and was created and produced by Defendant Titmouse and its officers, directors, and employees, namely, Defendant Moscovici, Defendant Brooks, Defendant Chris Prynoski, and Defendant Shannon Prynoski. (ECF No. 5, at ¶ 45). Defendant Titmouse, Defendant Moscovici, Defendant Brooks, Defendant Chris Prynoski, and Defendant Shannon Prynoski are collectively referred to as the "Titmouse Defendants."

Plaintiffs reviewed the *Fairfax* series and, as described in detail below and in Plaintiffs' First Amended Complaint, ¶ 56–93, disappointingly discovered that key elements of Plaintiffs' *Hillside Lakes* were copied and included throughout Defendants' *Fairfax* series. (ECF No. 5, at ¶ 46.) There are an alarming number of substantial similarities between key and unique elements of Plaintiffs' original *Hillside Lakes* and the infringing *Fairfax* as produced by the Titmouse Defendants. (ECF No. 5, at ¶ 47.) Throughout the course of production of *Fairfax* and after the Titmouse Defendants' accepted delivery of the Hillside Lakes Materials, the Titmouse Defendants prominently included unique and distinct key elements of *Hillside Lakes* in and throughout *Fairfax*. (ECF No. 5, at ¶ 48.) The scenes and plot scenarios in Defendants' *Fairfax* are copies of or substantially similar to the original

scenes and plot scenarios of Plaintiffs' *Hillside Lakes*. (ECF No. 5, at ¶ 49.) Additionally, the character traits of characters in Defendants' *Fairfax* and the expressions, interactions, and relationships between them are the same as or substantially similar to those of Plaintiffs' *Hillside Lakes*' characters. (ECF No. 5, at ¶ 50.)

Plaintiffs' First Amended Complaint alleges that Defendant Titmouse licensed distribution and other rights to the infringing *Fairfax* series to Defendant Amazon in all media (ECF No. 5, at ¶ 51), and Defendant Amazon distributed and otherwise exploited the infringing *Fairfax* worldwide (ECF No. 5, at ¶ 52). As a result of Defendant Amazon's worldwide distribution, the infringing *Fairfax* series has been made available to millions of end users resulting in increased revenue and brand recognition for all Defendants, without Plaintiffs' knowledge or consent. (ECF No. 5, at ¶ 53.)

Plaintiffs' First Amended Complaint further alleges that Defendants had access to Plaintiffs' intellectual property as demonstrated by Defendant Moscovici's contributions to and retention of the Hillside Lakes Materials in blatant disregard for his obligations under the NDA (ECF No. 5, at ¶ 54) and the Titmouse Defendants' possession of the Hillside Lakes Materials through direct delivery from Plaintiff Amick. (ECF No. 5, at ¶ 55.) Importantly, Defendants do not dispute their multiple points of access to and possession of the Hillside Lakes Materials.

Plaintiffs' First Amended Complaint sets forth specific and substantial similarities between the two series and they pertain to plot and dialogue (ECF No. 5, at ¶ 56–71), characters and character relationships (ECF No. 5, at ¶ 72–84), and the setting (ECF No. 5, at ¶ 85–93).

    **A.**    **Plot and Dialogue**: Both series are centered around a culturally diverse group of friends in fictional neighborhoods of Los Angeles. (ECF No. 5, at ¶ 56.) Plaintiffs' original theme song and color-popping animation style graphic effects are copied and used in the introduction of each episode of Defendants' infringing

work. (ECF No. 5, at ¶ 57.) Plaintiffs' *Hillside Lakes* opens with the voice of wise-cracking birds, ends with a wise crack from the same birds, and shows the unique images of a street corner with handpicked music in the background – all of which Defendants copied and used in the infringing *Fairfax*. (ECF No. 5, at ¶ 58.) The opening and closing scene of both series feature a car crashing into a typically immobile streetside utility object or dialogue directly regarding such act. (ECF No. 5, at ¶ 59.) Plaintiffs' *Hillside Lakes* storyline is centered on introducing the characters as they gather for a cultural opportunity to appear on a reality show, while the central and substantially similar storyline in Defendants' *Fairfax* mimics that of *Hillside Lakes* in which instead of gathering for an audition as contained in Hillside Lakes, the characters in *Fairfax* gather for a cultural fashion show opportunity. (ECF No. 5, at ¶ 60.) The entire plot of Plaintiffs' *Hillside Lakes* is centered around each neighborhood development and the unique events that transpire within each such development, which Defendants copy and use in *Fairfax*. (ECF No. 5, at ¶ 61.) Plaintiffs include a specific television celebrity doctor as a central character in the Hollywood storyline of its plot (ECF No. 5, at ¶ 62) which character and interaction are based on Plaintiff Arauz's unique personal experience in working on a production with a television celebrity doctor (ECF No. 5, at ¶ 63). Defendants also include a television celebrity doctor who appears and sounds the same as or substantially similar to the television celebrity doctor first included by Plaintiffs (ECF No. 5, at ¶ 64.) Both television celebrity doctors are significant characters in the Hollywood storyline of each respective animated series. (ECF No. 5, at ¶ 65.) Plaintiffs' *Hillside Lakes* series includes an episode in which a highly valued pet is kidnapped and held for ransom, which storyline Defendants copy and include in *Fairfax*. (ECF No. 5, at ¶66.) Similarly, wise cracking birds reference being kidnapped in the same manner and under similar circumstances in each animated series. (ECF No. 5, at ¶ 67.) A continuing and quirky part of the *Hillside Lakes* storyline includes characters wildly licking popsicles, which is mirrored throughout Defendants' *Fairfax* series. (ECF No.

5, at ¶ 68.) A unique scene in *Hillside Lakes* includes a supporting character wearing a pair of tight blue swimming trunks and swimming around with a group of young fans, which is mirrored in a scene in *Fairfax* in which a character wearing a pair of tight blue swimming trunks is swimming in a sea of "heart" likes, the social media equivalent of "fans." (ECF No. 5, at ¶ 69.) Both animated series include a bizarre and out-of-the-ordinary street encounter with a transient current celebrity and a supporting character who parasails into a crowd of cheering fans. (ECF No. 5, at ¶ 70.) The final act of Defendants' infringing *Fairfax* depicts a car hitting a pole in the same manner and mirroring the dialogue of *Hillside Lakes*. (ECF No. 5, at ¶ 71.)

**B.    Characters and Character Relationships**: "Truman," the principal character in Defendants' *Fairfax*, is a mirror image of Plaintiffs' principal character in *Hillside Lakes*, "Tony." (ECF No. 5, at ¶ 72.) Plaintiffs' "Tony" and Defendants' "Truman" have the same voice, tone, and inflection; both have a high-top fade hairstyle; both wear the same clothes and clothing style; and both share cocky demeanors and side jobs, all of which are central to each character. (ECF No. 5, at ¶ 73.) Defendants' central supporting character, "P-Dub," is the same character as Plaintiffs' "Buttah;" both characters share the same complexion and matching facial hair, tall and muscular build, voice and cadence of speech, and tone of voice (ECF No. 5, at ¶ 74.) Plaintiffs' "Buttah" is further duplicated by Defendants' "P-Dub" as each of these central characters share the same "old school" mentality, lack of mindfulness, and are an ongoing nuisance to other central characters in each respective animated series. (ECF No. 5, at ¶ 75.) The relationship between "Truman" and "P-Dub" in *Fairfax* is unquestionably based on and copied from the relationship between "Tony" and "Buttah" in Plaintiffs' *Hillside Lakes*. (ECF No. 5, at ¶76.) "P-Dub" and "Buttah" both act as mentors and figures of authority to the principal character in *Fairfax* and *Hillside Lakes*, respectively. (ECF No. 5, at ¶ 77.) Truman, the principal character in *Fairfax*, seeks the same advice of P-Dub repeatedly and throughout multiple episodes of *Fairfax*, copying the mentor-mentee relationship of

Tony and Buttah in *Hillside Lakes*. (ECF No. 5, at ¶ 78.) Also, the voice, cadence, and tone of Defendants' *Fairfax* character, Dale, is the same as or substantially similar to the voice, cadence, and tone of Plaintiffs' *Hillside Lakes* character, Eric. (ECF No. 5, at ¶ 79.) Mike's signature and uniquely recorded tagline of "Whaaaaaaat?!" in a high-pitched and drawn out manner in *Hillside Lakes* is the exact same tagline delivered by Defendants' *Fairfax* character, Dale. (ECF No. 5, at ¶ 80.) Further, and upon information and belief, Defendants' use and sample of Plaintiffs' recording of Mike's tagline from *Hillside Lakes* and included same in *Fairfax* without Plaintiffs' consent. Also, Defendants' *Fairfax* prominently features raunchy, foul-mouthed birds who provide off-the-cuff commentary on the events and occurrences in their fictional towns throughout each episode of *Fairfax*, mirroring the same raunchy, foul-mouthed bird in Plaintiffs' *Hillside Lakes*. (ECF No. 5, at ¶ 82.) Likewise, the voice, cadence, and tone of Plaintiffs' character, Sam, in the key opening scene of *Hillside Lakes* is copied by Defendants' character, Derica and included in a key opening scene in *Fairfax*. (ECF No. 5, at ¶ 83.) Defendants' character, Melody Harper, is an ostentatious celebrity and cultural influencer, a direct replica of Plaintiffs' character, Nikki, both of whom share the same type of conversations and interactions with other key characters in their respective animated series. (ECF No. 5, at ¶ 84.)

       **C.**    **Setting**: *Hillside Lakes* and Defendants' infringing *Fairfax* are both centered around a culturally diverse group of misfit friends in a fictional version of a Los Angeles neighborhood with the same or substantially similar geography, ethnic demographics, age demographics, and income levels. (ECF No. 5, at ¶ 85.) *Fairfax's* settings, locations and references throughout the production are copied and extracted directly from the unique *Hillside Lakes'* pitch bible and include a pun-filled neighborhood pet store, a white Rastafarian/Bohemian-type character who operates a beverage bar that also serves as a medical marijuana hangout. (ECF No. 5, at ¶ 86.)

1  Defendants have each been generating revenue, profits, and goodwill through

2  the exploitation of all rights in and to the infringing *Fairfax* without Plaintiffs'

3  knowledge or consent. (ECF No. 5, at ¶ 87, 88.) The unique and creative protectable

4  elements of *Hillside Lakes* have been unquestionably and intentionally planted

5  throughout *Fairfax* added essential depth to the characters and storylines in order to

6  bring *Fairfax* to life. (ECF No. 5, at ¶ 89.) Defendants have failed to provide

7  Plaintiffs with credit as creators or co-creators of *Fairfax*. (ECF No. 5, at ¶ 90.)

8  Defendants' willful and unauthorized use and exploitation of the infringing *Fairfax*,

9  which undeniably copies or is substantially similar to unique and protectable aspects

10  of Plaintiffs' *Hillside Lakes*, constitutes copyright infringement and contributory

11  infringement pursuant to 17 U.S.C. § 501, entitling Plaintiffs, under the Copyright

12  Act, to the damages sought in the First Amended Complaint. The copying and

13  substantial similarity contained in *Fairfax* can only be explained by Defendants'

14  unauthorized use of Plaintiffs' intellectual property which includes, but is not limited

15  to, the unique and creative work protected by Registration. (ECF No. 5, at ¶92.) The

16  First Amended Complaint further alleges that Defendants' undeniable access through

17  multiple points and parties combined with Defendants' inclusion of the same and

18  substantially similar protectable elements result in blatant infringement of Plaintiffs'

19  valuable intellectual property. (ECF No. 5, at ¶ 93.)

20  ### III.    LEGAL STANDARD

21  Defendants have filed a motion to dismiss under Rule 12(b)(6) alleging that

22  Plaintiffs' Amended Complaint fails to state a claim. Alternatively, Defendants are

23  seeking dismissal under Rule 12(c) claiming they are entitled to judgment on the

24  pleadings. A Rule 12(c) motion may only be considered after the pleadings are closed

25  and applies the same standard as a Rule 12(b)(6) motion. *Polaris Innovations Ltd. V.*

26  *Kingston Technology Co.*, 223 F. Supp 3d 1026, 1028-1029 (C.D. Cal. 2016).

27  Under Federal Rule of Civil Procedure 12(b)(6), a district
court must dismiss a complaint if it fails to state a claim
28  upon which relief can be granted. The question presented by

1
2
3
4

a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

5
6
7
8
9
10
11
12
13
14
15

In answering the question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are mere conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). While courts to not require "heightened fact pleading of specifics," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* At 1965. Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

16
17
18
19
20

If the Court dismissed the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

21
22
23

*Brave New Films 501(C)(4) v. Weiner*, 626 F. Supp 2d 1013, 1015-1016 (N.D. Cal. 2009).

24
25
26
27
28

Rule 12(b)(6) of the Federal Rules of Civil Procedure must be read in conjunction with Rule 8(a) which requires a short and plain statement of the claim showing that the pleader is entitled to relief. Dismissal is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint.
A Rule 12(b)(6) dismissal is proper only where there is either a lack of a cognizable legal theory or the absence of

> sufficient facts alleged under a cognizable legal theory. A motion to dismiss for failure to state a claim is generally viewed with disfavor and is rarely granted. A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*RDF Media Ltd. V. Fox Broad. Co.*, 372 F. Supp. 2d 556, 560 (C.D. Cal. 2005) (cleaned up) (motion to dismiss copyright infringement, contributory copyright infringement, and vicarious copyright infringement claims denied).

## IV.    ANALYSIS

Plaintiffs' First Amended Complaint contains five counts: copyright infringement (Count I) (ECF No. 5, at ¶ 94–102), contributory copyright infringement (Count II) (ECF No. 5, at ¶ 103–07), vicarious copyright infringement (Count III) (ECF No. 5, at ¶ 108–11), unjust enrichment (Count IV) (ECF No. 5, at ¶ 112–16), and breach of contract as to Defendant Moscovici (Count V) (ECF No. 5, at ¶ 117–20). Defendants' motion asserts that Plaintiffs have failed to state a valid claim for copyright infringement, and, therefore, all of Plaintiffs' counts fail. However, as set forth below, Plaintiffs' allegations are fact based and state valid claims upon which the jury may grant relief.

In *August Image, LLC v. Trend Hunter Inc.*, No. CV 22-7120-DMG (MAAAx), 2023 U.S. Dist. LEXIS 162807, at *3-4 (C.D. Cal. Sept. 12, 2023) the court denied the defendant's Rule 12(b)(6) motion to dismiss a copyright infringement claim. In considering the motion, the court applied the pleading requirement of Rule 8(a)(2).

> Federal Rule of Civil Procedure 8(a)(2) required that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2). To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant. Copyright claims need not be pled with

1
2
3

> particularity complaints simply alleging present ownership
> by plaintiff, registration in compliance with the applicable
> statute and infringement by defendant have been held
> sufficient under the rules.

4

*August Image* at *3-4 (cleaned up).

5

Plaintiffs have properly pled a claim for copyright infringement.

6
7
8
9

> To establish a successful copyright infringement claim, a
> plaintiff must show that he or she owns the copyright and
> that defendant copied protected elements of the work.
> Copying may be established by showing that the infringer
> had access to plaintiff's copyrighted work and that the
> works at issue are substantially similar in their protected
> elements.

10

*Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (cleaned up).

11
12

Defendants do not challenge Plaintiffs' claim that they had access to Plaintiffs' work.

Defendants' motion is based only on the substantial similarity of the two works.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Defendants rely on four cases to assert that this Court may decide lack of substantial similarity on a motion to dismiss because the copyrighted work and the infringing work are both before the Court. However, the cases relied upon by Defendants do not support dismissal in this matter. Neither *Christianson v. West Pub. Co.*, 149 F.2d 202 (9th Cir. 1945) nor *Masterson v. Walt Disney Co.*, 821 F. App'x 779 (9th Cir. 2020) identify the basis for the motion to dismiss and neither offers any guidance in this matter. *Christianson* involved a dispute over a map in which the plaintiff "makes no claim to having originated the plan nor the title, nor to arranging the states in group. The only thing original about appellant's map was the use of a map to illustrate the [National Reporter S]ystem." *Christianson*, 149 F.2d at 203. Likewise, *Masterson* is distinguishable from the present matter before the Court. The court in *Masterson* found that the movie and book shared a general theme, but that it was too general to be protectible.

27
28

*Carlini v. Paramount Pictures Corp.*, 2022 WL 614044 (9th Cir. Mar. 2, 2022), also relied upon by Defendants, sets forth the required elements to establish copyright infringement. The plaintiff

> must sufficiently allege unlawful appropriation and copying. Unlawful appropriation requires a plaintiff to allege that there are substantial similarities between the two works. Copying may be shown with direct evidence of copying or by showing that the defendant had access to the plaintiff's work. To assess substantial similarity, we apply the extrinsic test. Under the test, a court must take care to inquire only whether the *protectible elements, standing alone*, are substantially similar. The extrinsic test is objective in nature and focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works.

*Id*. at 2–3 (cleaned up). Although the court in *Carlini* found that there was no unlawful appropriation, the similarities between the two works were essentially non-existent. They had different plots, different female protagonists, and the other two characters were "quite different." *Id*. "Other aspects of the works, such as themes, settings, dialogue, and mood and pace" were dissimilar. *Id*. In stark contrast to *Carlini*, Plaintiffs' first amended complaint, as detailed above and discussed below, sets forth numerous and substantial similarities.

*Astor-White v. Strong*, 817 F. App'x 502 (9th Cir. 2020), the fourth case relied upon by Defendants, was decided on the basis of lack of copying, finding that after allowing the plaintiff multiple opportunities to amend the complaint, the plaintiff failed to show that the alleged infringing party "had a 'reasonable opportunity or reasonable possibility of viewing'" plaintiff's work. *Id*. at 2. Access is not at issue in this case. Defendants have not denied having access to Plaintiffs' work. In contrast to *Astor-White*, Plaintiffs provided the Hillside Lakes Materials directly to the Titmouse Defendants (specifically to Defendants Moscovici and Brooks). The *Astor-White* court also found "the two works only share unprotectable 'ideas and concepts,

1  material in the public domain, and scènes à faire.[1]" *Id*. at 3. However, *Hillside Lakes*
2  ideas and concepts are unique and not standard, common, or found in the public
3  domain.

4  　　　The proper analysis for determining copyright infringement was well laid out
5  in *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017), in which the
6  court granted summary judgment in favor of the plaintiff. "To provide copyright
7  infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed
8  work and (2) copying of the protected elements of the work by the defendant." *Id*. at
9  980 (quoting *Passilas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)). "A
10 plaintiff must show 'copying' of a protected work to prove copyright infringement."
11 *Id*. at 984. "If there is no direct evidence of copying, a plaintiff may prove this
12 element through circumstantial evidence that (1) the defendant had access to the
13 copyrighted work prior to the creation of defendant's work and (2) there is substantial
14 similarity of the general ideas and expression between the copyrighted work and the
15 defendant's work." *Id*. at 984–85 (citing *Sid & Marty Krofft Television Prod., Inc. v.*
16 *McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977), *superseded on other*
17 *grounds by* 17 U.S.C. § 504(b).) Plaintiffs' First Amended Complaint properly pleads
18 access and substantial similarity.

19　　　　　In assessing whether particular works are substantially
20　　　　　similar, or strikingly similar, this Circuit applies a two-party
　　　　　　analysis: the extrinsic test and the intrinsic test. The
21　　　　　extrinsic test requires plaintiffs to show overlap of
　　　　　　"concrete elements based on objective criteria," while the
22　　　　　intrinsic test is subjective and asks "whether the ordinary,
　　　　　　reasonably person would find 'the total concept and feel of
23　　　　　the works' to be substantially similar," Because "substantial
　　　　　　similarity is usually an extremely close issue of fact . . .
24　　　　　summary judgment has been disfavored in cases involving
　　　　　　intellectual property." However, a grant of summary
25　　　　　judgment for [the] plaintiff is proper where works are so
　　　　　　overwhelmingly identical that the possibility of independent
　　　　　　creation is precluded..
26

27 ───────────────

28 [1] Scènes à faire means "stock or standard features that are commonly associated with the treatment of a given subject." *Masterson* at 5.

*Unicolors*, 853 F.3d at 985 (cleaned up). Because the evidence regarding access was limited in *Unicolors*, the court noted that "[i]t focused instead on whether the designs were strikingly similar." *Id*. The court then applied the extrinsic and the intrinsic tests and found extreme similarities. Although the intrinsic test is often limited to jury consideration as noted by the court in *Unicolors*, it reaffirmed that "in exceptional cases, works may be so identical that summary judgement in favor of a plaintiff is warranted." *Id*. "A grant of summary judgment for plaintiff is proper where works are so overwhelmingly identical that the possibility of independent creation is precluded." *Id*. (quoting *Twentieth Century-Fox Fils*, 715 F.2d at 1330). However, *Unicolors* emphasized that in those circumstances where the works are not overwhelmingly identical, "it is the role of the jury to make a nuanced subjective determination under the intrinsic test." *Unicolors*, 853 F.3d at 987; *see also Gregorini v. Apple Inc.*, No. 2:20-cv-00406-SSS-JC, 2024 U.S. Dist. LEXIS 214480, at *17, n.8 (Nov. 25, 2024) ("The 'intrinsic test,' or a comparison from the 'standpoint of the ordinary observer' is reserved for the jury.").

Applying the objective extrinsic test in comparing *Hillside Lakes* and *Fairfax*, there is considerable "overlap of concrete elements." To restate some of the similarities (see facts section above for a more detailed comparison), both are centered around a culturally diverse group of friends in fictional neighborhoods of Los Angeles, both use wise-cracking birds in combination with crafty sarcastic dialogue, both have the same opening and closing scene, both make use of the same television celebrity doctor, both have characters wearing blue swimming trunks in integral scenes, and both have multiple characters with the same voice, cadence, timing, inflection, and tone who have the same hairstyle, manner of dress, and the same dialogue. The similarities are well-pled by Plaintiff and meet the necessary threshold for copyright infringement, showing substantial similarity in plot, themes, dialogue, mood, setting, pace, characters, and sequence of events. As such, Plaintiffs' First Amended Complaint and all counts set forth therein should not be dismissed.

In *Gregorini*, the Ninth Circuit reversed the district court's dismissal of the complaint, holding "dismissal was 'improper' because 'reasonable minds could differ on the issue of substantial similarity.'" *Gregorini*, 2024 U.S. Dist. LEXIS at *4. Defendants then moved for summary judgment, which the district court denied. "To prove copyright infringement, Gregorini must establish (1) 'ownership," (2) 'copying,' and (3) 'unlawful appropriation.'" *Id.* at *5–6. The issue of ownership has not been disputed by Defendants; Plaintiffs' copyright application matured and was granted registration by the United States Copyright Office as contained in the Registration. With respect to copying, "[a] plaintiff may prove copying with either (1) a circumstantial showing defendants had access to plaintiff's work and the two works share similarities or (2) direct evidence." *Id.*, at *9. The court noted that "[u]ltimately, Gregorini must show that Defendants 'had an opportunity to view or copy' her work." *Id.* (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000)). Defendants certainly had an opportunity to view or copy Plaintiffs' work while it was in Defendants' possession and otherwise, resulting in satisfaction of the second element.

> To determine unlawful appropriation, the Court must decide whether the two works share substantial similarities. The Court first notes that the Ninth Circuit has held – in this very case – that 'summary judgment is not highly favored on questions of substantial similarity in copyright cases." That is because the question of originality is one of fact, not of law.

*Id.* at *16 (cleaned up).

> The Court must first distinguish between protectable and unprotectable elements, and then decide whether the protectable elements are substantially similar. For example, general plot ideas, familiar stock scenes and themes and incidents that flow naturally from a basic plot premises are unprotectable. However, a particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element.

*Id.* at *17. This "selection-and-arrangement theory of copyright infringement does not entail filtering out unprotected elements." *Id.* at *18 (quoting *WMTI Prods., Inc. v.*

*Healy*, No. CV 20-02726-CJC (MAAx), 2023 U.S. Dist. LEXIS 152761, 2023 WL 5506712, at 6.) Rather, "[t]he selection-and-arrangement itself becomes a protected element." *Id.* at *18. "For instance, 'where wavy hair alone may not be protectable, wavy hair combined with a polka dotted dress, stilettos, and a smiling child smelling a flower may form a protectable expression.'" *Id.* (quoting *Schmidt v Baldy*, No. CV 16-9368-DSF (AGRx), 2019 U.S. Dist. LEXIS 182826, 2019 WL 5389868, at 6 (C.D. Cal. Oct. 19, 2019)). After comparing the two works, the *Gregorini* Court concluded, "[a]lthough undeniable 'differences exist between the works,' there is 'too much in common for a court to conclude that 'no reasonable juror could find substantial similarity.'" *Id.* at *22 (quoting *Wilson v. Walt Disney Co.*, No. 14-CV-01441-VC, 2014 U.S. Dist. LEXIS 105310, 2014 WL 4477391, at 1 (N.D. Cal. July 30, 2014)).

Even though Plaintiffs dispute Defendants' contention that the similarities between *Hillside Lakes* and *Fairfax* are generic, [t]he presence of many generic similarities and the common patterns in which they arise can satisfy the extrinsic test. *See Metcalf v Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002).

> The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection. A common pattern [that] is sufficiently concrete warrants a finding of substantial similarity. Even if none of these common plot elements is remarkably unusual in and of itself, the fact that both works contain all of these similar events gives rise to a triable question of substantial similarity of protected expression. Where main characters are both well dressed, wealthy, self-assured and have expensive tastes, the totality of these similarities goes beyond the necessities of defendants' work's theme and belies any claim of literary accident").

*Id.* The *Metcalf* court held that plaintiffs' case was strengthened considerably by defendants' concession of access to their works. *Id.* at 1075. ("If the trier of fact were

to believe that Warren and Bochco actually read the scripts, as alleged by the Metcalfs, it could easily infer that the many similarities between plaintiffs' scripts and defendants' work were the result of copying, not mere coincidence.”). Here, the stylistic similarities and common elements between *Hillside Lakes* and *Fairfax* are sufficient to defeat Defendants’ motion to dismiss in light of Defendants’ concession that they are not challenging access at this time.

### A.    Common Pattern of Shared Elements in *Hillside Lakes* and *Fairfax*.

Plaintiffs created and wrote *Hillside Lakes* based on Plaintiffs’ personal experiences, life stories, observations, and circumstances while living in a Los Angeles neighborhood near Hollywood, which served as the inspiration for the fictitious *Hillside Lakes* neighborhood, apartment complex, and relationships amongst its characters. The characters are a unique group of culturally diverse friends who reside in a fictional version of a Los Angeles neighborhood

With Defendants’ direct access to and possession of Plaintiffs’ work not disputed, the numerous similarities between *Hillside Lakes* and *Fairfax* were the result of copying and not mere coincidence. The totality of the similarities in *Hillside Lakes* and *Fairfax* goes beyond the basic premise of an animated comedy featuring a diverse group of friends living near Hollywood and overcomes the age difference between the different groups of friends in the two works. In both works, the characters are preoccupied with celebrity culture and the entertainment industry. The combination of shared elements and events between *Hillside Lakes* and *Fairfax* form a common pattern sufficiently concrete to warrant a finding of substantial similarity. The shared elements and events in *Hillside Lakes* and *Fairfax* are:

1. The *Hillside Lakes* teaser and script consistently parody the “Hollywood fame machine,” with overblown branding, contain characters that are seeking social validation and which parody pitch shows, all in a satirical tone, which are copied and used in *Fairfax*.

2. The opening of Hillside Lakes and Fairfax both contain ensemble sequencing, parody of branding, character-based satire, talking animal commentary, and mocking of characters and popular culture.

3. *Hillside Lakes*' storyline is centered on introducing the characters as they gather for a popular culture pursuit of appearing on a reality show, while the central storyline in *Fairfax* mimics that of *Hillside Lakes* and instead of gathering for an audition, in *Fairfax*, the characters gather for a popular culture pursuit of attending an exclusive sale of branded merchandise.

4. *Fairfax's* locations and references throughout the production are copied and extracted directly from the unique *Hillside Lakes*' pitch bible: a pun-filled neighborhood pet store and a white Rastafarian/Bohemian-type character who operates a beverage bar that also serves as a medical marijuana hangout. Example: *Hillside Lakes* pitch bible, page 3, paragraph 6; *Fairfax* Season 1, Episode 2 at 9:19-10:28.

5. *Hillside Lakes* includes a television celebrity doctor based on Plaintiff Arauz's personal experience working with such television celebrity doctor. *Fairfax* also includes a television celebrity doctor who appears and sounds the same as or substantially similar to the celebrity doctor in *Hillside Lakes*. Both celebrity doctors are significant characters in the Hollywood storyline of each respective animated series, are wellness industry parodies and are creatively and purposefully included to mock and frame absurd reality-style advice. The celebrity doctors in both works are wellness industry parodies. Example: *Hillside Lakes* pilot script, pp. 5-8; *Fairfax* Season 1, Episode 1.

6. *Hillside Lakes* opens with the voice of wise-cracking birds, ends with a wise crack from the same birds, and shows the unique images of a street corner with handpicked music in the background – all of which Defendants copied and used in *Fairfax.* Example: *Hillside Lakes* sizzle reel at 7:16-7:32; *Fairfax* Season 1, Episode 3 at 20:46-22:16. Max the parrot in *Hillside*

*Lakes* and the pigeons in *Fairfax* are talking birds, serving as a recurring comic device of providing snide and self-aware commentary on the characters and the storylines. Example: *Hillside Lakes* sizzle reel at 7:19-7:33; *Fairfax* Season 1, Episode 1 at 22:10-22:16. Another unique similarity involves a mistaken identity scene in which Max the parrot in *Hillside Lakes* is kidnapped at a music festival and the pigeons in *Fairfax* discuss an incident of nearly becoming a pet of an organic farmer. Example: *Hillside Lakes* pitch bible, "Road Trip" episode summary; *Fairfax* Season 1, Episode 5, Chernobylfest scene.

7. *Hillside Lakes* includes a recurring cussing bird, Max, who makes snarky remarks for comedic impact. *Fairfax* includes recurring cutaways from the snarky birds to emphasize the same comedic effect.

8. The opening and closing scenes in the introductory episodes of the *Hillside Lakes* and *Fairfax* series feature a car crashing into an immobile object or dialogue directly addressing such act.

9. *Hillside Lakes* and *Fairfax* both include product parodies that are promoted within character dialogue and background visuals.

10. Both series include a bizarre encounter with a transient celebrity, with Marilyn Manson pushing a grocery cart down the street in Hillside Lakes and Joaquin Phoenix appearing in a menacing manner in *Fairfax* with similarly eerie music as in *Hillside Lakes*. Example: *Hillside Lakes* pilot script, page 20; *Fairfax* Season 1, Episode 1 at 9:13-10:08.

11. Both series include satirical rappers: the rap duo "Deeper Underground" in *Hillside Lakes* and rapper "Yung Polluter" in *Fairfax*. Example: *Hillside Lakes* pitch bible, page 12; *Fairfax* Season 1, Episode 4 at 19:50-20:40.

12. A unique scene in *Hillside Lakes* includes a supporting character wearing a pair of tight blue swimming trunks and swimming around with a group of young fans, which is mirrored in a scene in *Fairfax* in which a character

wearing a pair of tight blue swimming trunks is swimming in a sea of "heart" likes, the social media equivalent of fans. Example: *Hillside Lakes* pilot script, page 7; *Fairfax* Season 1, Episode 1 at 7:53. *Hillside Lakes* and *Fairfax* both include a unique  visual gag in which  a strong supporting character makes a dramatic entrance on a parasail. Example: *Hillside Lakes* pilot script, page 6; *Fairfax* Season 1, Episode 2 at 19:43-19:53.

13. Another unique scene in *Hillside Lakes* features a supporting character licking popsicles in exaggerated timing for comic effect including a visual innuendo, which is copied in a similar comedic manner and with the same or substantially similar timing and innuendo  *Fairfax*. Example: *Hillside Lakes* pilot script, pp. 9-11; *Fairfax* Season 1, Episode 2 at 2:34-2:36.

14. The characters in both *Hillside Lakes* and *Fairfax* parody product branding and marketing consistently in pointed conversations and multiple visual elements.

15. "Truman," the principal character in *Fairfax*, is a mirror image of "Tony," the principal character in *Hillside Lakes*. They share the same snarky role, have the same voice, tone, and inflection; both deliver ironic one-line quotes as advice to other central characters in each series, both have a high-top fade hairstyle; both wear the same clothes and clothing style; and both share street-smarts and side jobs, all of which are central to each character. Their low-key demeanor serves as a foil to their more flamboyant friends and elder figures.

16. The central supporting character, "P-Dub," in *Fairfax* is the same character as "Buttah" in *Hillside Lakes*. Both characters share similar physical attributes, voice, and cadence of speech. Tony's relation with Buttah is that of a comic duo, with Tony's practicality clashing with Buttah's high-energy absurdity. The relationship between "Truman" and "P-Dub" in *Fairfax* is unquestionably based on and copied from the relationship between "Tony"

and "Buttah" in *Hillside Lakes*. The dynamic of each pair's relationship plays an important comedic role in both series. Example: *Hillside Lakes* sizzle reel at 0:23-0:46; *Fairfax* Season 1, Episode 1 at 9:31.

17. The voice, cadence, pacing, and escalating tone of Dale in *Fairfax* is the same as or substantially similar to the voice, cadence, pacing and escalated tone of Eric in *Hillside Lakes*. Example: *Hillside Lakes* sizzle reel at 1:10-1:11; *Fairfax* Season 1, Episode 1 at 5:59-6:08. Each character is featured in nearly identical scenarios and scenes in whereby Dale and Eric each act out comparable scenes in which their fear of public embarrassment causes them to imagine worse-case scenarios involving suicide. Example: *Hillside Lakes* sizzle reel at 1:06-1:28; *Fairfax* Season 1, Episode 4 at 5:17-6:01.

18. The uniquely recorded tagline of "Whaaaat?!" belonging to Mike in *Hillside Lakes* is duplicated by Dale in *Fairfax*. Mike is another friend in Hillside Lakes. Example: *Hillside Lakes* sizzle reel at 1:46-1:53; *Fairfax* Season 1, Episode 3 at 0:42-0:53.

19. Melody in *Fairfax* is a stylish ostentatious celebrity and attention-seeking cultural influencer, a direct replica of the stylish and camera-obsessed Nikki in *Hillside Lakes*, both of whom share the same role in their respective friend group and each of whom share the same type of conversations and interactions with the other key characters in their respective series. Example: *Hillside Lakes* sizzle reel at 2:44-2:52 and 3:44-3:46; *Fairfax* Season 1, Episode 2 at 0:45-0:54. Each character is introduced with stylized title card and graphics to emphasize their persona. Example: *Hillside Lakes* sizzle real intro; *Fairfax* Season 1, Episode 2 intro.

20. Johnny, in *Hillside Lakes*, makes his entrance with the line, "Shariff, what's up, baby?" which is delivered with a relaxed slouch, cool-eyed smirk, and rhythmic pacing in which the swagger is conveyed through tone, head tilt and confident posture. In *Fairfax*, Uncle Mindi enters with the line,

"Disco, how's the wife, baby?" in the same low-key and confident tone and
with the same body language in which Johnny delivers his introductory line.
Both characters use "baby" in a comedic manner and to identify the person
to whom they are speaking and to whom such moniker would typically not
be used. The distinctive character delivery, verbal tone and verbal rhythm
are stylized as expressive character introductions, the use of "baby" as an
identity phrase, the comedic pacing, tone-based swagger, and stylized
introductory moment delivered with nonchalant body language are the same
in both works.

21. *Hillside Lakes'* Nikki and *Fairfax's* Melody are both introduced with
uniquely designed and stylized title cards which include graphics with the
same timing to emphasize their unique personalities.

22. The voice, cadence, and tone of Sam, another friend in the opening scene of
*Hillside Lakes,* is copied by *Derica* in Fairfax. Example: *Hillside Lakes*
sizzle reel at 3:28-3:31; *Fairfax* Season 1, Episode 1 at 2:50-2:53.

23. Both Sam in *Hillside Lakes* and Derica in *Fairfax* have the same walk,
movements, gestures and vocal pacing.

24. Johnny, Nikki's boyfriend in *Hillside Lakes,* uses her oversized sunglasses
as a vanity mirror, which is copied by multiple characters in *Fairfax*,
particularly Truman and Dale, who frequently check their appearance in
phone screens, shop windows, and other reflective surfaces when in social
settings. The interaction is clearly a play on influencer behavior, with the
other friends reacting passively or ignoring the behavior, which is the same
reaction that Nikki gives to Johnny in *Hillside Lakes*. Example: *Hillside
Lakes* sizzle reel at 2:39-2:41; *Fairfax* Season 1, Episode 1 at 1:17.

25. In the "Dollar Explosion Scene" in *Hillside Lakes*, Mike extends his arms as
dollar rolls unfurl causing Mike's eyes to bulge into dollar signs and which
includes a "jackpot" special effect. In Fairfax, Benny extends his arms as

1    dollar signs appear on the screen which are accompanied by "jackpot"

2    special effects. Example: *Hillside Lakes* sizzle reel at 1:52-2:00; *Fairfax*

3    Season 1, Episode 3 at 4:27-4:36.

4    26. The closing credits in *Hillside Lakes* include Max the parrot delivering a

5    snarky punchline in a stylized squawk voice. Similarly, in *Fairfax*, a talking

6    bird delivers a nearly identical comedic line over the closing credits with

7    the matching gone and delivery style. The comedic stinger format, stylized

8    bird voiceover, and the timing over rolling credits are contained in both

9    works. Example: *Hillside Lakes* animatic sizzle reel at 7:16-7:32; *Fairfax*

10    Season 1, Episode 3 at 20:46-22:16.

## V.    CONCLUSION

11

12    Plaintiffs skillfully created, used and developed highly unique settings,

13    machinations, characters,  dialogue, and other creative elements in *Hillside Lakes* in

14    an original manner that was copied by *Fairfax* to such a degree and effect that the

15    numerous specific shared elements in common patterns satisfy the objective criteria

16    of substantial similarity, which cannot be explained by coincidence, and for which

17    Defendants' copyright infringement liability cannot be avoided.  Plaintiffs provid

18    more than 27 structured comparisons and identify numerous specific character traits,

19    audio phrasing, visual cues, narrative structure and narrative function, all of which

20    are highly detailed and original in expression and thus protectable, and all have been

21    mirrored and included in *Fairfax* without Plaintiffs' required consent.

22    For these reasons, the substantial similarities between *Hillside Lakes* and

23    *Fairfax* preclude dismissal, and Defendants' motion should be denied.

24

25    DATED: May 17, 2025              LAW OFFICES OF PAUL N. PHILIPS, APLC

26

27                                      By:  /s/   Paul N. Philips
                                      _____
28                                         PAUL N. PHILIPS, Esq.
                                          Counsel for Plaintiffs
                                          TOYA HANKINS, et al.